# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH FIKES,<br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>*Commissioner of Social Security*,[1]<br>    Defendant. | CIVIL ACTION NO. 1:18-00536-N |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deborah Fikes brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2] Upon

---

[1] Having been sworn in on June 17, 2019, Commissioner of Social Security Andrew M. Saul, as successor to Acting Commissioner Nancy A. Berryhill, is automatically substituted as the Defendant in this action under Federal Rule of Civil Procedure 25(d). (*See* https://www.ssa.gov/agency/commissioner.html & https://blog.ssa.gov/social-security-welcomes-its-new-commissioner (last visited Feb. 21, 2020)). This change does not affect the pendency of this action. See 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the docket heading accordingly.

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. §

consideration of the parties' briefs (Docs. 11, 12) and those portions of the administrative record (Doc. 10) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[3]

### I. *Procedural Background*

Fikes filed the subject applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA") on May 15, 2015. After they were initially denied, Fikes requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. A hearing was held on June 5, 2017; on November 24, 2017, the ALJ issued an unfavorable decision on Fikes's applications, finding her not disabled under the Social Security Act and thus not entitled to benefits. (*See* Doc. 10, PageID.51-70).

The Commissioner's decision on Fikes's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's decision on October 23, 2018. (*See* Doc. 10, PageID.44-49). Fikes subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section

---

1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 15, 16).

405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). In reviewing the Commissioner's factual findings, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence

preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result..."); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence.

---

even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

The review must take into account and evaluate the record as a whole.").[5]

Moreover, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper

---

[5] Nevertheless, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Additionally, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').").

standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo*

the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[6]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

---

[6] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established

that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Fikes met the applicable insured status requirements through December 31, 2015, and that she had engaged in substantial gainful activity since the alleged disability onset date of December 23, 2010, during the period from July 20, 2011, to December 31, 2011. Nevertheless,

the ALJ also found that there had "been continuous 12-month periods during which [Fikes] did not engage in substantial gainful activity[;]" therefore, the ALJ proceeded with the next steps of the sequential evaluation, with the "remaining findings address[ing] the periods [Fikes] did not engage in substantial gainful activity." (Doc. 10, PageID.57).[8]

At Step Two, the ALJ determined that Fikes had the following severe impairments: degenerative disc disease, fibromyalgia, obesity, and Crohn's disease. (Doc. 10, PageID.57-61). At Step Three, the ALJ found that Fikes did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 10, PageID.61-63).

At Step Four,[9] the ALJ determined that Fikes had the residual functional

---

[8] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

[9] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth

capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b),[10] except she can occasionally climb ladders, ropes, scaffolds, ramps and/or stairs[,] and can occasionally stoop, kneel, crouch, and/or crawl." (Doc. 10, PageID.63-68). Based on the RFC and the testimony of a vocational expert,[11] the ALJ determined that Fikes was able to perform past relevant work as a server, cashier, and claims adjuster (Doc. 10, PageID.68-69), thus making it unnecessary to proceed to Step Five. Accordingly, the ALJ found that Fikes was not under a

---

step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[10] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

[11] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

disability as defined by Social Security Act during the relevant adjudicatory period. (Doc. 10, PageID.69-70).

### IV. *Analysis*

#### A. Crohn's Disease

Fikes first argues that the ALJ reversibly erred by failing to adequately account for the limiting effects of her Crohn's disease. The undersigned is not convinced.

At Step Four, the ALJ found: "Ultimately, the medical evidence shows a history of Crohn's flares associated with symptoms of abdominal pain and cramping. However, [Fikes]'s x-ray of the abdomen showed no acute abnormality, and the majority of the evidence of record reflects improvement of symptoms with the use of medication being approximately five months after the initial diagnosis in January 2016." (Doc. 10, PageID.66). This finding was preceded by two paragraphs of the ALJ discussing record evidence related to Fikes's Crohn's disease (*see* Doc. 10, PageID.65-66). The ALJ documented Fikes's initial Crohn's disease diagnosis in January 2016, followed by several months of acute symptoms related to that impairment. However, the ALJ noted that subsequent medical evidence from as early as May 2016 indicated that Fikes's Crohn's disease symptoms began to improve. While Fikes did experience "a Crohn's flare" in October 2016, reporting "abdominal cramping and pain," she was merely "instructed to continue her medications." At a March 2017 examination, one of Fikes's treating physicians, Dr. Johnathan Siegel, noted that, "aside from mild constipation, her symptoms were

greatly improved[,]" with Fikes "den[ying] abdominal pain, bloody stool, changes in bowel habits, constipation, diarrhea, and nausea at that time…"

Fikes's brief largely just provides her own, more favorable summary of the same evidence the ALJ considered regarding Fikes's Crohn's disease.[12] However, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's, *Winschel*, 631 F.3d at 1178, and "even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi*, 386 F.3d at 1029. The ALJ's decision adequately indicates that he reached a reasonable conclusion based on substantial evidence as to the limiting effects of Fikes's Crohn's disease, and Fikes has given no persuasive reason to find otherwise.

### B. New Evidence to the Appeals Council

In denying Fikes's request for review, the Appeals Council noted that she had

---

[12] In her only specific challenge to the ALJ's fact-finding, Fikes claims that the ALJ took Dr. Siegel's "greatly improved" comment out of context, claiming he was referring to "her previous months' hospitalization." (Doc. 11, PageID.1058). Reading Dr. Siegel's full note in context, the undersigned finds that the ALJ presented Dr. Siegel's "greatly improved" statement in the proper context. Dr. Siegel noted that during a February 2017 hospital stay, he put Fikes "on high-dose IV steroids and gave her a dose of Remicade 10 mg/kg[,]" after which "[h]er symptoms quickly improved" and "[s]he was discharged on azathioprine 100 mg once daily and prednisone 40 mg daily." (Doc. 10, PageID.1041). Dr. Siegel then followed that statement with: "[S]he will be due for repeat Remicade dose April 6, 2017. Her symptoms are greatly improved. She does have mild constipation." (*Id.*). Read in full, then, Dr. Siegel's "greatly improved" comment is most naturally understood as referring to Fikes's overall condition. Regardless, even if Dr. Siegel's note is open to multiple interpretations, the ALJ's interpretation was reasonable, and this Court cannot substitute its judgment for the ALJ's. *Winschel*, 631 F.3d at 1178. *See also Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

submitted "Medical Records from Springhill Medical Center from January 29, 2018 to January 30, 2018 (9 pages)." (Doc. 10, PageID.45). The Appeals Council found that "[t]his additional evidence does not relate to the period at issue" and did not affect the ALJ's unfavorable decision. (*Id.*) Fikes's second, and final, claim of reversible error is that the Appeals Council incorrectly found this new evidence was not chronologically relevant.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process, including before the Appeals Council. The Appeals Council has the discretion not to review the ALJ's denial of benefits. But the Appeals Council must consider new, material, and chronologically relevant evidence that the claimant submits." *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (per curiam) (citations and quotations omitted). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

Fikes argues that the January 2018 records, documenting that she "was seen for wound care for an ulcer on her right great toe and was noted to be scheduled for colon surgery in the next several days" (Doc. 11, PageID.1058 (citing Doc. 10, PageID.85)), undercut the ALJ's determination that her Crohn's disease symptoms were "greatly improved." At most, the evidence of scheduled colon surgery would indicate a worsening of Fikes's Crohn's disease. However, courts "review the decision of the ALJ as to whether the claimant was entitled to benefits during a

specific period of time, which period was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (per curiam). Therefore, evidence that Fikes's Crohn's disease may have worsened after the date of the ALJ's unfavorable decision is not relevant to review of that decision. *See id.* ("The ALJ's decision in this case was rendered on March 28, 1995. While Dr. Felten's opinion one year later may be relevant to whether a deterioration in Anastasia's condition subsequently entitled her to benefits, it is simply not probative of any issue in this case.").[13] As for the right great toe ulcer, the medical records expressly noted it to be a "new" impairment (Doc. 10, PageID.85). Accordingly, the Appeals Council did not err in finding that this new evidence was not chronologically relevant, and the evidence does not render the ALJ's denial of benefits erroneous.

Fikes has failed to show reversible error in either the ALJ's or the Appeals

---

[13] *See also Hubbard v. Comm'r of Soc. Sec.*, 618 F. App'x 643, 651 (11th Cir. 2015) (per curiam) (unpublished) ("The ALJ's decision in this case was rendered on November 30, 2012. Therefore, the medical records from 2013 and 2014, purportedly showing a worsening of Hubbard's conditions, are not relevant to the issues in this appeal, even if they may be relevant should Hubbard file another application for disability benefits based on the period after the conclusion of the agency proceedings in this case, as indicated in the Appeals Council's decision." (citation and footnote omitted)); *Lindsey v. Comm'r of Soc. Sec.*, 741 F. App'x 705, 712 (11th Cir. 2018) (per curiam) (unpublished) ("The district court also did not err in determining that Lindsey's newly-discovered records from April 2016 through January 2017 were not material. First, none of the records from April 2016 to January 2017 are chronologically relevant, as they relate only to Lindsey's treatment after the ALJ's decision and do not change the picture of what his symptomology was like before the ALJ's decision. The records merely show that Lindsey suffered several episodes of decompression requiring extended periods of hospitalization *after* the ALJ's decision. *Wilson*, 179 F.3d at 1279." (some citations omitted)).

Council's decisions. Accordingly, the Court finds that the Commissioner's final decision denying Fikes's applications is due to be **AFFIRMED**.

V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Fikes's May 15, 2015 applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 21st day of February 2020.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**